Bartley, C. J.,
dissenting. After the formation of the present ■ constitution of this state, by the convention, but before the time when it was to be ratified and to take effect, the general assembly under the former constitution, on the 21st day of March, 1851, being then in session, passed the act entitled “ an act to authorize free banking.” This statute provides for a general system of banking ■ corporations, adopted'ire a manner differing from, and with terms at ■ at variance with, the new constitution, without limitation upon the number of corporations to be formed, or any restriction as to their locality or aggregate capital, and authorized to continue until the 'year 1872 and forever thereafter, unless the law should be repealed. And the question presented in this case is, whether the provisions ■ of the constitution, in relation to banking corporations, have been thus superseded by a legislative enactment, passed after the formation of the constitution, but before it went into operation.
I may premise, that the rule, and the reason of the rule, that repeals by implication, are not favored, have no application in case *332 of the abrogation of laws in the reconstruction of the government, by the formation of a new constitution. The effect of the new constitution was to abrogate the former constitution, and all laws resting on its authority. Hence, the necessity of the express saving-provision as to prior laws, by the first section of the schedule* Prior laws, “not inconsistent with this constitution,” *are ex- 332 pressly saved and upheld by the constitution itself. And this saving of prior laws carries with it, of course, all the necessary incidental power for the due execution of the laws saved. And whether-a law has been abrogated or not, can not present the question of a. repeal by implication, for it is a question of a saving by express provision.
The following sections of the thirteenth article are the provisions of the constitution, bearing directly on the question under consideration :
Sec. 1. The general assembly shall pass no special act conferring-corporate powers.
Sec. 2. Corporations may be formed under general laws; but all such laws may, from time to time, be altered or repealed.
Sec. 3. Dues from corporations shall bo secured by such individual liability of the stockholders, and other means, as may be prescribed by law; but in all cases, each stockholder shall be liable, over and above the stock by him or her owned, and any amount unpaid thereon, to. a further sum, at least equal in amount to such stock.
Sec. 4. 'The property of corporations, now existing, or hereafter-created, shall forever be subject to taxation, the same as the property of individuals.
Sec. 7. No act of the general assembly, authorizing associations-with banking powers, shall take effect until it shall be submitted to the people, at the general election next succeeding the passage thereof, and be approved by a majority of all the electors voting at-such election.”
It is said, that these several provisions are prospective in their operation. In one sense this is correct; and the same may.be said of almost every other provision of the constitution. But to say that those provisions are all limited prospectively to the exercise of the legislative power, is not only imposing a material qualification upon the language of the second and third sections, but contradicting the express terms of the fourth section. The subject-matter of the thirteenth article of the constitution is that of corporations — not-simply corporations hereafter authorized, but also corporations here- *333, 334 333] sitos formed, as well as corporations *already existing. Each •of these sections contains a distinct and independent proposition, • complete within itself.
The object of the 13th article of the constitution is shown by reference to circumstances existing prior to, and at the time of, the formation of the constitution. Unequal and unjust advantages had been given by special legislation in favor of corporations for a series of years, until it had become a subject of very general complaint throughout the state. With a view to provide against this •evil in future, the first section of the 13th article inhibited all future special legislation conferring corporate powers. This provision was of course operative only as a restraint on the future •exercise of legislative power. But this was not sufficient of itself to prevent the future growth of the evil. Special legislation had already authorized the formation of corporations, not yet organized in all parts of the state, to an incalculable extent. So that without •some provision on the subject of the formation of corporations, the evils of special legislation conferring corporate powers would be continued by the future formation of corporations under prior special legislation, for a series of years to come. To meet this contingency the second section .was inserted, prescribing certain requisites in the mode of forming corporations in future; the third section fixing the individual liability of corporators, and the fourth section subjecting corporate property to equal taxation. The constitution having thus prescribed certain terms for the formation or organization of future corporations, and fixed the liability of the • corporators to some extent, it followed, after the constitution took effect, that new corporations could not be formed or organized in any other mode, or upon any other terms than those prescribed in the constitution. Authorizing corporations to be formed by the 334] ^enactment of a law conferring corporate powers, and the formation of corporations after the corporate powers have been authorized, are different and distinct matters. This distinction is highly important; indeed essential to a correct interpretation of the constitution. While it is manifest, from the whole tenor of the instrument, that it was not the intention of the constitution to abrogate existing corporations already formed under prior laws, it is equally plain, that it was not the intention, that after the constitution ■■■should take effect, new corporations should be formed, or brought into existence under prior laws, in a mode and on terms at variance *335 ■with, those prescribed by the constitution. By the period fixed for Tfcbe termination of the .corporate powers of the banking corporations, existing .prior to the formation of the constitution, the old •system would, by its own terms, gradually expire. But if the provision saving prior laws, in order to continue for a time corporations •previously formed,' could have the effect to allow new corporations 'to be formed, and to grow up under such prior laws, after the constitution took effect, the important and salutary regulations for future corporations, contained in the constitution, would have been, rendered almost, if not wholly nugatory. For, if the formation of new corporations under prior laws, at variance with the constitution had been permitted, new banking corporations, brought into existence after the constitution took effect, could have been continued for many years, and perhaps for an indefinite period of time, in a mode and on terms in conflict with, and in defiance of, the provisions of the constitution; and it would have left the power in the general assembly under the old constitution, which 'was in session at the time of the adjournment of the constitutional convention to have enacted and brought into existence after the formation of the new constitution, but before *it took effect, an extensive general system of corpora- [335 tions, which might have virtually superseded, and wholly defeated, for all time to come, the provisions of the new constitution. It is not fair nor reasonable to presume, that the framers of the constitution lost sight of this difficulty; on the contrary, they appear to have had it especially in view. Hence the provisions of the second and third sections of the thirteenth article of the constitution, by which they prescribed terms and conditions in the formation of corporations and the liabilities of corporators, applicable to all corporations which might be organized or brought into existence, after the constitution took effect. These sections are not limited in their operations to the exercise of the legislative power, but apply to the status and organized existence of the artificial persons themselves. The term “formed," used in the second section, is synonymous with organized, and signifies the act of erecting, and giving form and substance to the legal body itself. The subject-matter of the second section is the formation or organization of corporations, and the predicate the mode or conditions prescribed. And the subject-matter of the third section is the individual liability of the corporators, and the predicate the liability prescribed. To construe these two *336, 337 sections as creating conditions or terms applicable simply to the future exercise' of the legislative power, would bo a limitation or-. qualification upon their operation wholly unwarranted by the language used. Each of these sections contains a distinct proposition complete within itself, and neither has any necessary dependence-upon or connection with the first or seventh sections of the article qualifying its language. The first and seventh sections, in direct and express language, fix limitations and conditions in the exercise of the legislative power, and can operate only prospectively 336] upon the legislative power conferred by the *now constitution. And the limitation of these provisions, to the future exercise of the legislative power, was necessary to prevent conflict with prior laws, under which corporations already formed, were existing. The manifest .intention of the constitution not to abrogate existing corporations, but leave them to stand, is shown by the fourth section of this article of the constitution, which expressly recognizes the continuance of already existing. corporations, by providing for a mode of taxing them. And inasmuch as the first- and seventh sections operate only prospectively, on the exercise of the legislative power, and the second and third sections operate prospectively only on the organization of corporations formed after the constitution took effect, existing corporations already formed, and the prior laws under which they wore upheld, were left to stand undisturbed by the operation of the constitution. And the provision of the schedule saving all prior laws, not inconsistent with the new constitution, carried with it, by necessary implication, all the incidental powers of the former constitution essential to the due-execution of such prior law. As the second and third sections operate only on the act of organizing or forming new corporations,, they could present no conflict with prior laws, under which corporations previously formed were existing, except whore it might be vitally essential to the existence of a law itself, that now corporations, at variance with these provisions of the constitution, should be formed. For example, take the “ act to incorporate the State Bank of Ohio, and other banking companies.” Under this law, a, system of banking corporations was in existence when the 'constitution took effect; and although, but for the constitution, additional corporations might have been formed under the law, yet it was not. essential to the operation of the law for the purposes .of the cxist337] ing corporations *that such new or additional corporations *338 should be formed. Had the provisions of the law imperatively required the formation of new and additional corporations, or had no corporations been already formed under its authority, it would have presented an unavoidable inconsistency with the constitution in its necessary and essential provisions, and therefore fell by the operation of the constitution. But, inasmuch as the second and third sections of the thirteenth article of the constitution do not affect the imperative and essential provisions of the law itself, but only operate prospectively on the formation or organization of corporations, the law is left in force and not abrogated, although no new corporations can be formed under it, after the constitution took effect. This construction effectuates the manifest intention of the constitution. Any other construction would lead necessarily to one or the other of two absurdities, to wit, either that the provisions of the constitution could bo defeated by the continuing formation of corporations under prior laws, after the constitution took effect, or that the prior laws containing the franchises of previously formed and existing corporations were abrogated, and such prior corporations abolished by the operation of the constitution.
It is said, however, that the import of the second section of this article is a grant of power to the general assembly. To this there are two unanswerable replies. In the first place, all the legislative power of the state is conferred by the first section of the second article of the constitution; and it can not be denied that this general grant of the legislative powerfully included a general authority to grant corporate powers. And the limitation imposed upon the legislative power by the first section of the thirteenth article, as to passing of special acts conferring corporate powers, still left, the general assembly clothed with *full power to confer corporate [338 powers by general laws. So that, as a grant of power, the second section would have been wholly unnecessary and mere surplusage. In the next place, it is preposterous to suppose that the framers of the constitution would have inserted a separate and independent section in the constitution in order to express, indirectly, what could have been expressed by direct language and in fewer words, by a simple addition to the preceding section, thus :
“ Sec. 1. The general assembly shall pass no special act conferring corporate powers, hut corporate powers may be conferred by general laws, which may, from time to time, be altered or repealed.” This would have given the provision direct and exclusive application to *339 tho legislative power, and not required a stretch of the judicial power to change or limit the plain and natural import of the language of the constitution by construction. By putting the provision in the form of a separate and independent section, and ■clothing it in language having direct and plain application to the formation or organization of new corporations, instead of the oxcr■cise of the legislative power in conferring 'corporate privileges, an organic principle was expressed perfectly consistent with the spirit and manifest general intent of the constitution, and which can not, by a fair and warranted interpretation, be limited in its application ■to the mere exercise of the legislative power in future.
The following propositions express the effect'of the most plain and well-settled rules of legal interpretation :
1. Where the language of an instrument is plain, clear, and determinate, it is to bo taken in its usual and known meaning, giving full scope to the signification of the Words with reference to the subject-matter in relation to which they are employed.
2. Where the provision of an instrument is clothed in language 339] ^requiring interpretation or construction, in order to ascertain its true legal import in the connection in which it is used, that interpretation or construction is to be favored which is consistent with the fair and reasonable intent of the instrument, and that to be avoided which involves manifest absurdity, or tends to defeat the full and fair operation of nhe instrument.
Apply these rules to the question before us. The language of the second and third sections of the thirteenth article of the constitution is plain, clear, and determinate, and has direct application to th e formation of corporations; and to limit its operation to the mere exercise of legislative power in future, would be changing the direct and plain import of the words by unwarranted interpretation ; and'thus to restrict the operation of these provisions would lead to the absurd conclusion that prior laws could perpetuate the existence of corporations formed after the constitution took effect, in a manner, and upon terms, at variance with the constitution, and thus virtually defeat' the operation of -important organic principles prescribed by the constitution for corporations in future.
The case of Cass v. Dillon, 2 Ohio St. 608 has been referred to as an authority to sustain the opinion of the majority of the court in the case before us. With all proper deference, I must be permitted to say that, in my judgment, the decision in Cass v. Dillon has “no ap *340, 341 plication whatever to the real question now before us. That ease depended on the construction to be given to an entirely different provision of the constitution, to wit, the sixth section of the eighth article, which is a simple limitation on the future exercise of the legislative powei-in express and direct words. I concurred in that '■decision, although I did not then, and do not now, approve of all the reasoning *of the learned judge who delivered the opinion [340 of the majority of the court.
Taking the foregoing views as expressing the true interpretation ■of the constitution, and which, with all proper deference for the opinion of the majority of the court, I most respectfully insist is the •correct one, it follows that, after the constitution took effect, corporations could not be legally formed, or brought into existence, without a conformity with each one of the following organic principles.
1. The authority for the corporate powers must be conferred by ¿a general law.
2. Such general laws must be subject to alteration or repeal.
•3. The laws must provide for and require the individual liability of the stockholders, for the dues of the corporations, to an amount as great, at least, as that imperatively required by the constitution.
4. The property of the corporations must forever be subject to taxation, the same as the property of individuals.
After the constitution took effect, therefore, no new corporations could be formed under the authority of the “ act to authorize free •banking,” passed March 21,1851, because:
1. That law did not provide for or require the individual liability of the stockholders", imperatively required by the constitution in all corporations formed after the constitution took effect. This organic principle of the constitution affects the fundamental -structure of corporations’, and could therefore in no manner be avoided or dispensed with.
2. Under the doctrine established by the majority of this court at the present term, that the franchise of a corporation is a contract, this law would not be subject to alteration or repeal until the year 1872. See infra, Ross Co. *Bank v. Lewis. It is true- [341 I dissented from this doctrine, that the franchise of a corporation is a contract, and by means thereof withdrawn from legislative control by alteration or repeal, and 1 have placed my reasons for my dissent fully upon record. See infra, dissenting opinion in Matheny *342 v. Golden. But the doctrine established by the majority of this court will be taken as the law of this state until overruled.
The tenth section of this law contains the following provision: “Every company formed under this act, after having procured the certificate required in the fifth section of this act, shall be, and hereby is, created a body politic and corporate, with succession, until the year eighteen hundred and seventy-two, and thereafter, until the repeal of this act, and by its name shall have power f etc.
Now, according to the doctrine laid down by the’Supreme Court of the United States, and unfortunately still adhered to by a majority of that court, and still more unfortunately recognized as law in Ohio, by a majority of this court, at the present term, this law embodies the terms of an express contract between the state and each corporation existing under it, and that therefore it can not be altered or repealed until the year 1872, without a violation of the provision of the constitution of the United States prohibiting the enactment of a law by any state impairing the obligations of a contract. And I must be permitted to say, with all due deference, that I consider this doctrine, that the charter of a corporation is a contract, grossly preposterous, and most unjust and opjmessive in its-tendency. In the inherent nature and essence of the things themselves, a law can not be a contract, and therefore, by a constructive fiction, protected from legislative control by amendment or repeal. The constitution, however, has, out of abundant caution, and to guard 342] against the *unjust and oppressive consequences of this doctrine promulgated by the federal judiciary, provided that authority for forming corporations shall only exist under general laws subject to be altered or repealed.
For the foregoing reasons, thus briefly stated, I dissent from the opinion of the majority of the court in this case, holding that the motion for the allowance of the writ of mandamus ought to be overruled.